UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IRA MARLOWE and MELANIE
MARLOWE,

    Plaintiffs,

v.                                       Case No.:   2:18-cv-245-FtM-38MRM

IRONSHORE SPECIALTY INSURANCE
COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs Ira and Melanie Marlowe's Motion to Vacate and/or Modify the Appraisal Award filed on August 21, 2019. (Doc. 58). Also before the Court is Defendant Ironshore Specialty Insurance Company's Memorandum of Law in opposition to Plaintiffs' Motion to Vacate and/or Modify the Appraisal Award. (Doc. 59). For the reasons set forth below, the Undersigned respectfully recommends that Plaintiffs' Motion to Vacate (Doc. 58) be **DENIED**.

### BACKGROUND

This matter arises from an insurance dispute in which Plaintiffs allege Defendant, their homeowner's insurance policy issuer, failed to properly compensate Plaintiffs after Hurricane Irma damaged their property. (*See* Doc. 2). Specifically, the instant dispute arises from the Court's Order compelling appraisal. (Doc. 39). The Undersigned, therefore, will summarize the contested facts stemming from the actions of the three-person appraisal panel consisting of: (1) Plaintiffs' appraiser; (2) Defendant's appraiser; and (3) the Umpire.

Because the parties offer significantly different versions of the appraisal process, the Undersigned begins with those facts the parties do not dispute. Each party selected a respective appraiser and the appraisers, failing to resolve the dispute, in turn selected an appraisal Umpire. (*See* Doc. 58 at 1-2; Doc. 59 at 4). The Umpire issued an appraisal award that Defendant's appraiser agreed with, but Plaintiffs' appraiser contested. (Doc. 58 at 4; Doc. 59 at 5). The dispute here revolves around whether the panel properly and fairly issued the appraisal award.

Plaintiffs allege the appraisal process deprived them of their right to a full and fair appraisal. Specifically, they allege Defendant's chosen appraiser "did not prepare his own independent evaluation" and "either refused to offer his opinion . . . or was just a puppet" of Defendant. (Doc. 58 at 6). In other words, they claim had Defendant's appraiser cooperated with Plaintiffs' appraiser, the matter would not proceed before an Umpire and here the Umpire had no opportunity to evaluate the appraiser's opinion as Defendant's appraiser did not form an opinion. (*Id.*).

Deeming the appraisal award too low, Plaintiffs argue the appraisal panel "failed to include all the incurred [costs of the] completed prior repairs." (Doc. 58 at 6). They maintain the reliability of the award is in question because it fails to consider Plaintiffs' prior expenditures repairing the property. (*Id.* at 7). In the alternative, Plaintiffs argue the Court should at least modify the award to include these prior expenses. (*Id.* at 8). Plaintiffs also allege the appraisal panel exceeded its authority by calculating both a Recoverable Cash Value ("RCV") and Actual Cash Value ("ACV"). (*Id.*; *see* Doc. 32-1 at 79). Finally, Plaintiffs allege the Umpire incorrectly calculated the award for their roof damage as he never personally observed their roof. (Doc. 58 at 8).

Defendant offers a much different version of events. First, it states its appraiser adopted the opinion of Defendant's independent adjustor after the appraiser reviewed over 1,400 photographs, repair bids, and other related documents. (Doc. 59 at 4). Defendant's appraiser also twice inspected the property in person and informed the appraisal panel of the basis for his agreement with Defendant's independent adjustor. (*Id*. at 5).

Plaintiffs' appraiser objected to the initial appraisal award because it was too low and failed to include the costs of prior repairs. (Doc. 59 at 6). After the panel signed and executed the appraisal award, Plaintiffs' appraiser again informed the Umpire that he failed to consider the prior expenses and a new roof repair estimate in his calculation. (*Id*.). The Umpire did not find these arguments persuasive and refused to re-open the appraisal or modify the award. (*Id*.).

With these arguments in mind, the Undersigned turns to the appropriate legal standard for setting aside an otherwise complete and executed appraisal award.

## LEGAL STANDARD

A federal court sitting in diversity applies the substantive law of the forum state; in this case, Florida. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76 (1938). "Section 682.13 of the Florida Statutes provides the grounds for vacating arbitration awards, but Florida state courts and [federal courts] have held that it also provides the grounds for vacating insurance appraisal awards." *See Villas at the Hammocks v. Empire Indem. Ins. Co.*, No. 11-20470-cv-UNGARO, 2011 WL 13223726, at *2 (S.D. Fla. Apr. 5, 2011).

Section 682.13(1) sets forth the following grounds for vacating an award:

(a)   The award was procured by corruption, fraud, or other undue means.

(b)   There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party.

>   (c)   The arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers.
>
>   (d)   The arbitrators or the umpire in the course of her or his jurisdiction refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 682.06, as to prejudice substantially the rights of a party.
>
>   (e)   There was no agreement or provision for arbitration subject to this law, unless the matter was determined in proceedings under § 682.03 and unless the party participated in the arbitration hearing without raising the objection. But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

*Villas at the Hammocks*, 2011 WL 13223726 at *2 (citing Fla. Stat. § 682.13(1)). In the absence of one the above reasons, "a court may not vacate the award." *Id*.

## DISCUSSION

**I.  Setting Aside the Award**

**A.  The Umpire Was Impartial.**

Plaintiffs first argue the Court should vacate the appraisal under § 682.13(1)(b). (Doc. 58 at 6). Much of their argument, however, charges Defendant's appraiser with corruption and not the Umpire. For example, Plaintiffs allege "[i]t is clear Defendant's appraiser was not partial and did not engage in the appraisal process as he did not prepare his own independent evaluation of the damages." (*Id*.). Plaintiffs also allege "Defendant's appraiser refused to prepare and/or provide an estimate for valuation of damages to the home." (*Id*.). They allege Defendant's appraiser was merely a "puppet" for Defendant and this thwarted the appraisal process thereby prejudicing Plaintiffs. (*Id*.). The appraiser's actions, Plaintiffs argue, "forced the appraisal to umpire [sic] and the umpire was not afforded the opportunity to evaluate the actual opinion of

4

Defendant's appraiser." (Doc. 58 at 6). Plaintiffs conclude, "[t]his has undermined the appraisal process and places a dark cloud on the reliability of the award." (*Id.*).

Plaintiffs' argument fails because § 682.13(1)(b) does not require an *appraiser* remain impartial, but instead governs the Umpire. A court may vacate an award for "evident partiality . . . only in the case of a neutral arbitrator." *Lee v. Marcus*, 396 So. 2d 208, 209 (Fla. 3d DCA 1981). The Eleventh Circuit, however, has expressly stated an "arbitrator appointed by a party is a partisan only one step removed from the controversy and need not be impartial." *Lozano v. Maryland Cas. Co.*, 850 F.2d 1470, 1472 (11th Cir. 1988), *cert. denied* 109 S. Ct. 1136 (1989). Moreover, "[a]s the very nature of the widely-employed three-person arbitration panel itself implies, the arbitrators designated by the parties are not intended to be entirely disinterested or impartial." *Lee*, 396 So. 2d at 209. "Accordingly, it has been held, seemingly without exception, that absent overt corruption or misconduct in the arbitration itself . . . no arbitrator appointed by a party may be challenged on the ground of his relationship to that party." *Id*. Thus, Plaintiffs' argument necessarily fails as a matter of law because they do not allege the Umpire himself was corrupt, but that Defendant's appraiser was the impartial party.

Plaintiffs allege the Umpire's actions prejudiced them because the Umpire did not "evaluate the actual opinion of Defendant's appraiser in determining the amount of damages." (Doc. 58 at 6). Defendant's appraiser, however, asserts in an affidavit that he reviewed over 1,448 photographs of the property that Defendant's third-party claims administrator's independent adjuster took while inspecting the property. (Doc. 59-1 at 3). The appraiser attests he also reviewed the Proof of Loss Statement submitted by Plaintiffs, three estimates Plaintiffs' public adjuster prepared, Plaintiffs' various repair bids, an engineering report prepared on behalf of Defendant, and other documentation. (*Id.*). Assuming solely for the sake of argument that in

relying on Defendant's independent adjustor's findings the appraiser acted corruptly, Plaintiffs fail to show how this corruption extends to the Umpire. Furthermore, the Umpire did review Defendant's appraiser's opinion which Defendant's appraiser testifies he provided the panel. (*See* Doc. 59-1 at 4). Simply because that opinion was similar to the independent adjustor's opinion, or one Plaintiffs do not agree with, does not mean the Umpire reviewed no opinion whatsoever. Thus, because Plaintiffs have failed to show the Umpire acted corruptly or in a manner prejudicing Plaintiffs, the Undersigned finds no reason to vacate the award under § 682.13(1)(b).

        **B.**       **The Umpire Considered All Material Evidence**.

Next, Plaintiffs argue "the award must be vacated," under § 682.13(1)(d), "as the reliability of the award must be in question." (Doc. 58 at 6-7). Plaintiffs briefly argue the appraisal panel failed to consider all the incurred completed prior repairs as the panel awarded less than the full amount for pavement repairs and the replacement of two windows, and according to Plaintiffs, that award also failed to include any money for temporary roof repairs. (*Id*. at 6). Plaintiffs in no way tie the panel's failure to include the total costs of these repairs to § 682.13(1)(d)'s grounds for vacating an award. *See* Fla. Stat. § 682.13(1)(d). Essentially what Plaintiffs are asking the Court to do is agree with them that the panel failed to properly compensate Plaintiffs for all their repairs.

However, the law is clear in that the Court may not substitute its judgment for that of the panel. Indeed, courts "do not review findings of fact contained in an arbitration award or attempt to substitute their judgment for that of the arbitrator." *Commc'n Workers of Am. v. Indian River Cty. Sch. Bd.*, 888 So. 2d 96, 99 (Fla. 4th DCA 2004). "Once the trial court has determined that the appraisal provisions of a contract of insurance have been properly invoked," as this Court did

6

(*see* Docs. 38, 39), "further proceedings should be conducted in accord with those provisions." *Allstate Ins. Co. v. Suarez*, 883 So. 2d 762, 765 (Fla. 2002). Put another way, "the appraisal proceeding [itself] should be conducted in accordance with the policy provisions and not pursuant to Florida's Arbitration Code." *A.L. Gary and Assocs., Inc. v. Travelers Indem. Co. of Conn.*, No. 08-60636-civ-GOLD/McALILEY, 2008 WL 11333729, at *6 (S.D. Fla. Aug. 27, 2008).

Nothing in the facts indicate, nor do Plaintiffs argue, that the panel "refused to postpone a hearing" or "conducted the hearing, contrary to the provisions of § 682.06." *See* Fla. Stat. § 682.13(1)(d). The only other reason subsection (d) might support this Court vacating the award would be if the panel "refused to hear evidence material to the controversy." *Id.* That is simply not the case here.

First, Plaintiffs state their appraiser "provided a full accounting via a DropBox link to the entire panel." (Doc. 58 at 1). This, in conjunction with the lack of any argument from Plaintiffs regarding what evidence the panel did not hear, severely undermines the assumption that the panel *refused* to hear evidence material to the controversy. According to Defendant's appraiser's affidavit, the Umpire also "circulated a revised award" in response to Plaintiffs' appraiser requesting additional money not included in the panel's first proposed award. (Doc. 59-1 at 4). The new award suggests the panel considered some additional argument, based on evidence material to the controversy, and agreed with Plaintiffs' appraiser. Speculating beyond the parties' arguments before the Undersigned would require the Court to substitute its judgment as to how the panel should have conducted the appraisal process, which is contrary to law. Therefore, the Undersigned finds no reason based on § 682.13(1)(d) to vacate the appraisal.

### C. The Panel Did Not Exceed the Scope of Its Jurisdiction.

Plaintiffs' third argument is that the appraisal panel "exceeded its authority in the appraisal process" because the panel determined both a Recoverable Cash Value ("RCV") and Actual Cash Value ("ACV"). (Doc. 58 at 7). Inasmuch, Plaintiffs ask the Court to vacate the award pursuant to § 682.13(c). (*Id*.).

Florida's supreme court has explained that an arbitration panel "exceeds [its] power when [it] goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Schnurmacher Holding, Inc. v. Noreiga*, 542 So. 2d 1327, 1328 (Fla. 1989). The claim that an arbitration panel exceeds its powers "is jurisdictional in nature and is in reference to the scope of authority given to [the panel] in the arbitration agreement." *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Center, Inc.*, 154 So. 3d 1115, 1137 (Fla. 2014).

The first question, then, is from where does the panel get its authority? Plaintiffs Insurance Policy Contract, in relevant part, reads:

> F.   Appraisal
>
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. **The appraisers will separately set the amount of loss**. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. **If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss**.

(Doc. 2-1 at 40 (emphasis added)). Thus, from this, it is clear the panel has the express power to set the amount of loss.

Turning next to the Endorsement Form of Plaintiffs' policy—which they attach as an exhibit in their Motion to Compel Appraisal (*see* Doc. 32-1)—the policy clearly states how the parties will settle their loss:

> We will settle the loss as follows:
>
> (a) We will initially pay **the actual cash value** of the building damage, minus any applicable deductible.
>
> (b) We will then pay **the necessary amounts actually spent to repair or replace** the damaged building as work is performed and expenses are incurred.

(Doc. 32-1 at 52 (emphasis added)).

This section makes clear that the policy contemplates Defendant will pay any loss based on either an *actual cash value* or *the necessary amounts* spent to repair the property. The two provisions taken together support the logical conclusion that the appraisal panel had the full authority to not only determine the amount of loss but what the actual cash value of the loss was and also the sum necessarily incurred as a result of the loss. A review of the panel's award shows a spreadsheet detailing both RCV and ACV. (Doc. 59-2 at 2). Notably, the RCV is several thousand dollars higher than the ACV. (*See id.*). So not only did the panel expressly carry out its obligation under the Insurance Policy to first calculate the ACV, but the panel then calculated, and Plaintiffs received, the higher payout of the RCV. Based on the foregoing, the Undersigned finds the panel did not exceed their authority.

### D. The Umpire Did Not Need to Personally Observe the Roof.

Plaintiffs' final argument to vacate the award is that the Umpire determined the amount of roof damage without ever personally observing Plaintiffs' roof. (Doc. 58 at 7). Not only was

this calculation impossible without personally observing the roof, Plaintiffs argue, but they also claim this "resulted in 65% of the roof replacement being paid under law and ordinance." (*Id.*). Thus, Plaintiffs ask the Court to vacate the award pursuant to §§ 682.13(1)(b) and (d). (*Id.*).

Plaintiffs' argument here is not clear. Defendant states Plaintiffs "make a convoluted argument that because the appraisal award included costs for full roof replacement, with part of the funds being paid pursuant to the Policy's Ordinance and Law Coverage, the appraisal award should be vacated as unreliable." (Doc. 59 at 13). From Defendant's characterization of Plaintiffs' argument, it appears that the award included a scrivener's error that mistakenly identified the funds earmarked for roof replacement as an "Ordinance and Law" payment. (*See id.*; *see also* Doc. 59-2 at 2 (noting $75,289.50 as the RCV for Ordinance & Law)).

What is clear, however, is that the Umpire stated, "it was not necessary for him to inspect the roof since the two appraisers agreed the roof required replacement." (Doc. 58 at 2). Plaintiffs' appraiser reaffirms in his affidavit the Umpire's reasoning and represents the Umpire "stated that seeing how the two panel members agreed the roof need [sic] and warranted a replacement, it was not necessary for him to inspect the roof." (Doc. 58-1 at 2). The Undersigned fails to see how the Umpire agreeing with and adopting both Plaintiffs' and Defendant's appraisers' views that the roof needed a full replacement runs afoul of §§ 682.13(1)(b) and (d). Plaintiffs have failed to convincingly argue the same. According to Plaintiffs' argument, Defendant paid the full amount for a roof replacement, albeit a portion of that payment is labeled "Ordinance & Law." (Doc. 58 at 7). The Undersigned finds that such labeling does not satisfy § 682.13's requirements and, therefore, finds no grounds on which to vacate the award.

**II.     Plaintiffs' Request to Modify the Award**

Plaintiffs, in the alternative, argue the Court "must modify the award to include the incurred repairs that have been completed." (Doc. 58 at 7). In support thereof, Plaintiffs cite to Fla. Stat. § 682.14 which states:

> (1) Upon motion made within 90 days after the movant receives notice of the award pursuant to s. 682.09 or within 90 days after the movant receives notice of a modified or corrected award pursuant to s. 682.10, the court shall modify or correct the award if:
>
> (a) There is an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award.
>
> (b) The arbitrators have awarded upon a matter not submitted in the arbitration and the award may be corrected without affecting the merits of the decision upon the issues submitted.

(Doc. 58 at 7). Because Plaintiffs argue "the appraisal panel failed to include all of the incurred prior repairs," they seek specifically to avail themselves of § 682.14(1)(a). (Doc. 58 at 8).

Florida's Arbitration Code also controls the modification of an appraisal award and state courts have "repeatedly recognized confirmation of appraisal awards under the procedure contained in Florida's arbitration Code" includes "any correction, modification, or vacatur of an award." *A.L. Gary and Assocs., Inc.*, 2008 WL 11333729, at *6. Additionally, the plain language of § 682.14(1)(a) expressly states that for a court to modify or correct an award there must be an "evident miscalculation" or an "evident mistake."

Here, the Undersigned finds the award was neither a miscalculation nor a mistake let alone an *evident* miscalculation or mistake. To the contrary, the Umpire intentionally excluded the prior costs of repair Plaintiffs argue the panel mistakenly left out. (*See* Doc. 58-1 at 2). Defendant's appraiser's affidavit explains on July 1, 2019, the Umpire circulated a draft of the

11

first proposed award to which Plaintiffs' appraiser objected. (Doc. 59-1 at 4). The next day, the Umpire circulated a new proposed appraisal award containing some, but not all, of the additional money Plaintiffs' appraiser sought. (*Id.*). The Umpire and Defendant's appraiser, pursuant to Plaintiffs' policy, signed the second award making it final as to the panel's findings. (*Id.*). This award was the Umpire's—and the panel's—deliberate decision. Plaintiffs' appraiser testifies after the panel executed the award, he sent an e-mail to the panel alleging the panel failed to consider all of Plaintiffs' costs and that Plaintiffs' appraiser received another estimate the panel should consider. (Doc. 58-1 at 2; *see also* Doc 59-1 at 4). Defendant's appraiser, however, attests the Umpire "stood by his calculation of the award" and declined Plaintiffs' appraiser's request. (Doc. 59-1 at 5). Accordingly, the Undersigned finds no reason to modify the award because there is no evident miscalculation or mistake.

Lastly, Plaintiff asserts that this Motion is "being served on the appraisal panel for it to modify or correct the award," pursuant to Fla. Stat. § 682.10. (Doc. 58 at 8). Section 682.10 states:

> (1) On motion to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award:
>
> (a) Upon a ground stated in s. 682.14(1)(a) or (c);
>
> (b) Because the arbitrator has not made a final and definite award upon a claim submitted by the parties to the arbitration proceeding; or
>
> (c) To clarify the award.
>
> (2) A motion under subsection (1) must be made and notice given to all parties within 20 days after the movant receives notice of the award.
>
> (3) A party to the arbitration proceeding must give notice of any objection to the motion within 10 days after receipt of notice.

12

Fla. Stat. § 682.10(1)-(3); (*see also* Doc. 58 at 8).

First, the Undersigned has already addressed—and found no merit in—Plaintiffs' § 682.14(1)(a) argument above. Section 682.14(1)(c) states the Court shall modify or correct the award if "[t]he award is imperfect as a matter of form, not affecting the merits of the controversy." Plaintiffs do not argue that the award is "imperfect as a matter of form" but that it is underinclusive as to the costs Plaintiffs incurred. (*See* Doc. 58 at 8). Thus, § 682.10(1)(a) is not applicable here. Furthermore, Plaintiffs do not seek a clarification of the award, but instead a modification increasing the total sum, meaning § 682.109(1)(c) is also inapplicable. (*Id.*). Accordingly, the only provision of § 682.109 that is applicable would be subsection (1)(b).

Here, because the panel's award is final, § 682.10(1)(b) in no way benefits Plaintiffs. "Florida Statute §682.10 provides that upon motion an arbitrator may modify or correct an award where **the arbitrator has not made a final and definite award** upon a claim submitted by the parties to the arbitration proceeding or to clarify the award." *Guzman v. American Sec. Ins. Co.*, 377 F. Supp. 3d 1362, 1365 (S.D. Fla. 2019) (emphasis added). "[O]nce an arbitrator has issued a final award and thus discharged his or her office, the arbitrator lacks any continuing power to revise the award or issue a new one." *Id*. (citing *Brotherhood of Elec. Workers v. Verizon Fla.*, 803 F.3d 1241, 1245 (11th Cir. 2015)).

Turning once more to the appraisal clause in Plaintiffs' insurance policy contract, "[a] decision agreed to by any two will set the amount of loss." (Doc. 2-1 at 40). Put another way, when any two members of the three-person panel agree as to the award, the award becomes final. Defendant's appraiser testifies "[o]n July 2, 2019, [the Umpire] circulated a revised award" and Defendant's appraiser "reviewed and agreed with the revised appraisal award. As such, [Defendant's appraiser] signed the award. That same day, [the Umpire] signed the award."

(Doc. 59-1 at 4). Because two members of the panel—the Umpire and Defendant's appraiser—agreed and signed the award in accordance with Plaintiffs' insurance policy, the award became final on July 3, 2019. (*Id*.). For the reasons discussed above, the Undersigned finds that the panel did not exceed its authority and there is no other basis to overturn the award, thus making the award final when two members of the panel agreed on the Umpire's final proposal. Therefore, § 682.10 provides no basis for modifying the award.

## CONCLUSION

The Undersigned finds no reason to overturn or modify the appraisal award. Plaintiffs have failed to show the Umpire expressed a bias against them. The panel's determination consisted of all material evidence before it and the panel did not exceed the scope of its authority pursuant to Plaintiffs' insurance policy when issuing the award. Additionally, the Umpire did not err in failing to observe the roof as both Plaintiffs' and Defendant's appraiser agreed that the roof needed replacement and any award for such a replacement was valid. Finally, because there was no mistake in calculating the award and the panel did in fact issue a final award, the Undersigned finds no reason to modify the award.

For these reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Motion to Vacate and/or Modify the Appraisal Award (Doc. 58) be **DENIED**.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on January 28, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties